Filed 11/18/25  In re L.J. CA4/2
Opinion following transfer from Supreme Court
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re L.J., a Person Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E080296 |
| Plaintiff and Respondent, | (Super.Ct.No. J287021) |
| v. | OPINION |
| S.M., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Steven A. Mapes, Judge.  Conditionally reversed.

Vincent Uberti and Elena S. Min, by appointment of the Court of Appeal, for Defendant and Appellant.

Tom Bunton, County Counsel, David Guardado and Laura Feingold, Deputy County Counsel, for Plaintiff and Respondent.

1

INTRODUCTION

S.M. (Mother) appeals from the juvenile court's order terminating her parental rights to her daughter, L.J.  She argues that San Bernardino County Children and Family Services (CFS) failed to discharge its duty of initial inquiry under the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq.) (ICWA) and California's implementing provisions.  Specifically, she argues that CFS failed to interview readily available extended family members regarding L.J.'s possible Indian ancestry[1] as required by former Welfare and Institutions Code, section 224.2, subdivision (b).[2]

In our original opinion, we concluded that former section 224.2, subdivision (b), did not apply because L.J. was taken into protective custody pursuant to a warrant.  Our Supreme Court granted review, remanded the cause to us for reconsideration in light of its decision in *In re Ja.O.* (2025) 18 Cal.5th 271 (*Ja.O.*), and we invited the parties to submit supplemental briefing on the issue.  In supplemental briefing, CFS concedes that it failed to discharge its duty of initial inquiry.  We agree and therefore conditionally reverse the order terminating parental rights and remand with directions.

FACTUAL AND PROCEDURAL BACKGROUND

In October 2020, several days after L.J. was born, CFS filed a dependency petition for the child, alleging that she was at risk of substantial harm under section 300,

---

[1] Because ICWA uses the term " 'Indian,' " we use it as well "to reflect the statutory language." (*In re Dezi C.* (2024) 16 Cal.5th 1112, 1125, fn. 1 (*Dezi C.*).)  No disrespect is intended.

[2] Unlabeled statutory citations refer to the Welfare and Institutions Code.

subdivision (b), as a result of Mother's anger management and mental health issues and her history of engaging in domestic violence in the presence of L.J.'s older siblings.  (*In re L.J.* (Sept. 13, 2023, E080296) [nonpub. opn.] (*L.J. I*){p. 1}.){CT 8}  At the detention hearing, Mother denied having any Indian ancestry.  (*L.J. I*, E080296.){p. 2}  At the jurisdiction and disposition hearing the following month, the juvenile court sustained the petition's allegations, took dependency jurisdiction over L.J., removed the child from Mother, and found that ICWA did not apply.  (*Ibid.*)

During the reunification period, Mother lived with her mother (the maternal grandmother) and Mother attended at least one visit with father's mother (the paternal grandmother).  (*L.J. I*, *supra*, E080296{pp. 4, 10}.){CT 234}  At the continued 12-month review hearing in March 2022, L.J.'s father denied having any Indian ancestry.  (*Id.*){p. 3.}  The same day, father submitted a Family Find and ICWA Inquiry form (CFS-030) with identifying and contact information for his sister (the paternal aunt).{CT 250}  At the 18-month review hearing the following month, the juvenile court terminated Mother's reunification services and set a permanency planning hearing for L.J. under section 366.26.(*Id.*){p. 4}

The permanency planning hearing took place in December 2022.  (*L.J. I*, *supra*, E080296.){p. 5}  The juvenile court terminated Mother's parental rights, found that L.J. was likely to be adopted, and selected adoption as her permanent plan.  (*Ibid.*)

Mother appealed the order terminating her parental rights.  As relevant here, she argued that CFS failed to discharge its duty of initial inquiry by failing to interview readily available extended family members—specifically, the maternal grandmother,

paternal grandmother, and paternal aunt—about L.J.'s possible Indian ancestry. (*In re L.J. I*, E080296.) In an unpublished opinion, we concluded that the duty to interview extended family members set out in former section 224.2, subdivision (b), never arose, because that duty applies only when a child was taken into temporary custody under section 306. (*In re L.J. I*, E080296.){p. 9.} At the time, there was a split of authority in our court on the interpretation of former section 224.2, and we followed the line of cases holding that the duty to interview extended family members does not apply in a case like this where the child was taken into protective custody pursuant to a warrant under section 340. (*Ibid.*)

The California Supreme Court granted review of the issue in *Ja.O.* Before the Court issued its opinion, the Legislature passed Assembly Bill No. 81 (2023–2024 Reg. Sess.) (Assembly Bill 81), and the Governor signed the bill as an urgency measure on September 27, 2024, effective immediately. (Stats. 2024, ch. 656.) "Assembly Bill 81 amended former section 224.2 to add language specifying that the extended-family inquiry duty applies whenever a child is placed into a county welfare department's temporary custody, regardless of how the child is removed from the home." (*Ja.O.*, *supra*, 18 Cal.5th at p. 277; see Welf. & Inst. Code, § 224.2, subd. (b)(1)-(2).)

In *Ja.O.*, the Court decided "whether the extended-family inquiry duty applies in *pre-Assembly Bill 81* cases"—like this case—"where the child was placed into a county welfare department's temporary custody after being removed from the home pursuant to a warrant." (*Ja.O.*, *supra*, 18 Cal.5th at p. 278, italics added.) The Court held that former section 224.2 must be interpreted "broadly to require the county welfare department to

4

conduct an extended-family inquiry in all cases in which a child is placed into its temporary custody, regardless of how the child is removed from the home." (*Id.* at pp. 290-291.) Following its decision in *Ja.O.*, the Court remanded this case to us for reconsideration.

## DISCUSSION

Mother argues that CFS did not complete its duty of initial inquiry under former section 224.2 because it failed to interview the maternal grandmother, the paternal grandmother, and the paternal aunt, each of whom were available to CFS during the dependency proceedings. On remand, CFS concedes the error, and we agree with the parties.

ICWA established "minimum standards for state courts to follow before removing Indian children from their families and placing them in foster care or adoptive homes." (*In re Dezi C.*, *supra*, 16 Cal.5th at p. 1129.) California's ICWA implementing statutes impose " ' an affirmative and continuing duty' " on agencies and juvenile courts in every child welfare case to inquire whether the child is or may be an Indian child. (*Ja.O.*, *supra*, 18 Cal.5th at pp. 277-278; former § 224.2, subd. (a).)

At the time the protective custody warrant for L.J. was executed, former section 224.2, subdivision (b), provided that the county welfare department must ask "extended family members . . . whether the child is, or may be, an Indian child." (Former § 224.2, subd. (b).) The term " 'extended family member' " includes the child's grandparents and aunts and uncles. (25 U.S.C. § 1903(2); accord, Welf. & Inst. Code, § 224.1, subd. (c)(1).) In *Ja.O.*, the Court held that the duty to interview extended family members set

5

out in former section 224.2, subdivision (b), applies "regardless of whether the child was removed from the home with or without a warrant." (*Ja.O.*, *supra*, 18 Cal.5th at p. 285.) We therefore conditionally reverse the order terminating Mother's parental rights and remand for CFS to complete its initial inquiry.

## DISPOSITION

The order terminating Mother's parental rights to L.J. is conditionally reversed. On remand, the juvenile court shall order CFS to comply with the inquiry requirements of section 224.2, consistent with this opinion. If the court subsequently determines that CFS has complied and that ICWA does not apply, then the court shall reinstate the order terminating parental rights. If the court determines that ICWA applies, then it shall proceed in conformity with ICWA and California's implementing provisions. (See *In re Dezi C.*, *supra*, 16 Cal.5th at p. 1141.)

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

FIELDS
J.

We concur:

CODRINGTON
Acting P. J.

RAPHAEL
J.

6